## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CHRISTOPHER LEE FRY,**

**Plaintiff,**

vs.

**GARY E. JOHNSON, Governor of New Mexico,**
**STATE OF NEW MEXICO,**
**NEW MEXICO DEPARTMENT OF CORRECTIONS,**
**ROBERT J. PERRY, Secretary of Corrections,**
**JOHN SHANKS, Director of Adult Prisons,**
**DONNA WILPOLT, Deputy Corrections Secretary,**
**JERRY TAFOYA, Deputy Corrections Secretary,**
**JEFF SERNA, Interstate Compact Coordinator,**

**CIV 0 0    0 3 9 8**

**LORENZO E GARCIA**

and

**THE WACKENHUT CORRECTIONS CORPORATION,**
**ELOY MONDRAGON, Former Warden,**
**MAJOR RALPH LUCERO, Director of Security**

and

**STATE OF VIRGINIA,**
**VIRGINIA DEPARTMENT OF CORRECTIONS,**
**RONALD ANGELONE, Virginia Corrections Director,**
**STANLEY K. YOUNG, Wallens Ridge State Prison Warden,**
**and PRESENTLY UNNAMED GUARDS AND OFFICERS,**

**Defendants.**

### COMPLAINT FOR VIOLATIONS
### OF CONSTITUTIONAL RIGHTS

Plaintiff Chris Fry presents the following Complaint seeking declaratory, compensatory, exemplary, and injunctive relief from Defendants' denials and violations of Plaintiff's constitutional and civil rights, stating as follows:

1.     Plaintiff is **Chris Fry**. In September, 1999, Plaintiff was a prisoner at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico. He was involuntarily transferred to Wallens Ridge State Prison in Big Stone Gap, Virginia, on or around September 25, 1999.

2.     Defendants are **the State of New Mexico, Gary Johnson**, New Mexico Governor; **New Mexico Department of Corrections, Robert J.  Perry**, Secretary of Corrections; **John Shanks**, Acting Deputy Secretary and Director of Adult Prisons; **Donna Wilpolt**, Deputy Secretary; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, Interstate Compact Coordinator.

3.     Defendant **Wackenhut Corrections Corporation** is the operator of the Guadalupe County Correctional Facility.  **Eloy Mondragon** is the former warden of the prison in Santa Rosa. **Major Ralph Lucero** was the Security Chief at GCCF.

4.     Defendants include the **State of Virginia**, the **Virginia Department of Corrections, Ronald Angelone**, Virginia Corrections Department Director, and **Stanley K. Young,** the Warden of **Wallens Ridge State Prison**. The **Presently Unnamed Guards and Officers** are State of Virginia employees and officials who personally abused and mistreated Plaintiff and violated his civil rights but who still have Plaintiff in their control and custody and whose names are not fully known at this time.

5.     Defendants Gary Johnson, Robert J. Perry, John Shanks, Donna Wilpolt, Jerry Tafoya, Jeff Serna, Eloy Mondragon, Ralph Lucero, Ronald Angelone, Stanley K. Young and

the unnamed guards and officers are sued in their individual as well as their official capacities. The individually named Defendants as well as the presently unnamed guards and officers, are alleged to have been directly, individually, and personally involved in the acts and omissions described herein or to have held supervisory or policy-making authority and control over those who did directly inflict punishment, pain, and deprivations of civil and constitutional rights on Plaintiff.

6.    Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States and the State of New Mexico.

## FACTUAL ALLEGATIONS

7.    On or around September 25, 1999, Defendants transferred Plaintiff from the Wackenhut prison in Santa Rosa, New Mexico to Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia, a Supermax Prison. The transfer of Plaintiff to Virginia came about three weeks after the murder of a guard, a subsequent riot at the prison, and the prior forced transfer of over a hundred prisoners to the Supermax prison in Virginia.

8.    Although the prison in Santa Rosa, New Mexico was relatively new, by August 1999 the provision of correctional services at the prison was far beneath reasonable and adequate standards of corrections management and operations.

9.    Classification and disciplinary systems were not functioning and Defendants were ignoring crucial institutional security issues and threats. The prison was built with

3

serious design and structural flaws. The prison was understaffed and the staff was inexperienced and poorly trained.

10.     Near the end of August 1999, following serious incidents of violence at private prisons around the State, Governor Johnson expressed his concern about the differences between public and private correctional facilities.

11.     According to Governor Johnson and Corrections Secretary Perry, prisoners at private prisons who were involved in violent incidents were being sent back to the State-run prisons, where living conditions were more comfortable than at the private prisons. Governor Johnson announced a new policy of sending such prisoners out-of-state instead.

12.     On or around August 27, 1999, the Corrections Department Defendants posted a Notice informing inmates that "Any further incidents of violence will result in the transfer of inmates to out-of-state facilities." The Notice advised the prisoners that they:

> WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.

(EXHIBIT 1).  The inmates perceived this Notice as a threat and a challenge.

13.     On August 30, 1999, there was an assault on two inmates in E-Pod. Although prison officials knew who the assailants were, they were not placed in segregation and at least one of the assailants was apparently involved in the fatal stabbing of Officer Ralph Garcia just a day later, on August 31, 1999.

14.    The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident." A few days later Perry announced:

> . . . . the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.

(EXHIBIT 2).

15.    According to Perry, the prisoners sent to Virginia "are the individuals from housing unit one, pod A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia." Perry's press release also stated that:

> The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

Referring to the prisoner transfers to Virginia, Perry announced that "(t)he state of New Mexico is not going to tolerate prison violence, homicide and riots, *and this is the response*."

16.    Plaintiff did not participate in the killing of the guard or the subsequent disturbance at the prison in Santa Rosa. At the time that occurred Plaintiff was in a segregation cell at the prison.

17.    The State of Virginia had recently opened its two new Supermax Prisons, Wallens Ridge and Red Onion. The Supermax prisons were designed and built to confine, control, and punish the worst and most violent and disruptive prisoners in the country.

5

18.    Upon his arrival at Wallens Ridge Plaintiff was immediately placed and held in a Segregation Unit. He remains in the Segregation Unit to this date, over six months later.

19.    Defendants keep Plaintiff in a 12' by 7' cell and deny reasonable opportunities for exercise or recreation out of his cell, deny any meaningful programs or activities, deny any medical or psychological attention, deny access to books or law library, deny telephone calls and other human contacts, unreasonably and cruelly humiliate and threaten him, and in many such respects subjected Plaintiff to cruel, harsh, and unusual conditions of control and confinement which are far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

20.    At Wallens Ridge Plaintiff is being subjected to extraordinarily harsh and degrading mistreatment, including denial of privacy, strict control and limitation of movement, removal of social contacts, absence of meaningful programs and activities, extreme punishment and behavioral modification efforts, and continual threats from electroshock weapons, chemical sprays, firearms and shotguns, police dogs, body restraints, and other Draconian methods of control and discipline.

21.    During the more than six months he has been at Wallens Ridge Plaintiff has never been allowed out of his cell without first being stripped, searched, shackled, chained, and handcuffed.

22.    During his time at WRSP Plaintiff has been accused and punished for alleged violations of arbitrary and unreasonable prison rules and regulations; he has been beaten,

kicked, shocked, tied down in "5-point restraints," and otherwise been forced to suffer pain, extreme and intense discomfort and physical and emotional injury.

23.     For the more than six months Plaintiff has been at WRSP Defendants have refused to allow him to have even minimal recreation or exercise time out of his cell. They have denied his choice of religious counseling; restricted his reading material; and interfered with and destroyed his mail. Defendants have arbitrarily refused to allow Plaintiff to shower and have refused to provide some of his meals. They have frequently shut off the water to his cell. Defendants have responded to some of Plaintiff's grievance complaints by falsely stating that he had "refused" the showers, meals, and other things Defendants refused to allow.

24.     Despite the physical injuries suffered by Plaintiff at WRSP, Defendants have refused medical attention and treatment. Despite Plaintiff's requests for psychological attention, Defendants have refused any treatment or counseling.

25.     At the time of his transfer to Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity in prison, and he was not a troublemaker.

26.     Defendants have still not given any reason or explanation for sending Chris Fry to Wallens Ridge and confining him in the Segregation Unit.

27.     Despite Defendants' lack of reason or justification for sending Plaintiff to WRSP, he remains at Wallens Ridge and continues to be subjected to the abuse and mistreatment described herein.

28.     Throughout the events described herein and to the present time, Defendants have forced Plaintiff to comply with arbitrary, unfair, and maliciously imposed rules, regulations, policies and practices. Defendants have physically and emotionally attacked, abused, and have deliberately attempted to inflict injury and punishment without any valid reason, just cause, or due process.

## COUNT 1

## VIOLATIONS OF THE RIGHT TO DUE PROCESS

29.     Defendants selected Plaintiff for transfer to the Supermax prison in Virginia without conducting any investigation, without stating any valid reason or justification, and without holding any hearing or allowing Plaintiff to make any presentation or defense against his transfer.

30.     The Fourteenth Amendment to the United States Constitution and Article II, Section 18, of the New Mexico Constitution provide the rights to due process and equal protection of the laws.

31.     Defendants Robert Perry, Eloy Mondragon, and other New Mexico Corrections Department and Wackenhut officials selected and approved the selection of Plaintiff for

8

transfer and Supermax imprisonment in Virginia without reason, justification, prior notice or a hearing.

32.     Defendants' transfer of Chris Fry to Virginia in chains and shackles, his extended misplacement in the Segregation Unit of a Super maximum security  prison in Virginia, and the continued imposition of cruelly restrictive conditions of confinement constitute atypical and significant hardships and deprivations of Plaintiff's fundamental rights and interests.

33.     Defendants' acts and omissions and their treatment of Chris Fry described herein violate commonly accepted norms of human, social,  personal, and official conduct and behavior, and constitute human rights violations which are truly unconscionable and offensive to the concept of ordered liberty.

34.     Despite his conviction and sentence, Plaintiff has a substantial residual liberty interest which Defendants have denied or seriously compromised by their acts and omissions.

35.     Defendants have used excessive force and inflicted cruel and unusual punishment, have violated Plaintiff's right of procedural and substantive due process of law, and have denied Plaintiff's right to equal protection of the law.  Defendants are liable for the damages proximately resulting from their violations of Plaintiff's civil and constitutional rights.

## COUNT 2

## VIOLATIONS OF THE RIGHT TO BE FREE
## OF CRUEL AND UNUSUAL PUNISHMENT

36.     The preceding allegations and claims are adopted.

37. The Eighth Amendment to the United States Constitution and Article II, Section 13, of the New Mexico Constitution prohibit the infliction of cruel and unusual punishment.

38. At the time Defendants transferred Plaintiff to Wallens Ridge, Plaintiff was a non-violent individual who had no disciplinary infractions or misconduct on his prison record.

39. By subjecting Plaintiff to the most harsh and extreme conditions of confinement and punishment and by the mistreatment of Plaintiff described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable or appropriate treatment of minimum or medium security and restriction prisoners.

40. Defendants knew that sending Plaintiff and other minimum and medium security prisoners like him to a Supermax penitentiary and placing him without reason or just cause in solitary confinement could and would needlessly inflict serious emotional harm and damage.

41. Defendants have established a pattern and practice of using unnecessary and excessive force which is not justified by any legitimate penological or correctional policies or practices. The force used against Plaintiff has not been motivated by any good faith effort to restore order or maintain the security of the prison. To the contrary, the force used against Plaintiff is arbitrary, gratuitous, and highly punitive.

10

42.   Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel and unusual punishment on Plaintiff.

## COUNT 3

### VIOLATIONS OF THE RIGHT TO BE FREE
### OF UNREASONABLE SEARCHES AND SEIZURES

43.   The preceding allegations and claims are adopted.

44.   Throughout the time he was transported to and from Wallens Ridge State Prison and while he was at Wallens Ridge, Plaintiff was repeatedly and painfully restrained, shackled, handcuffed, and required to endure long periods of distress and discomfort.

45.   The Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution prohibits unreasonable searches and seizures.

46.   The Virginia Defendants have forced Fry to submit to innumerable strip searches. A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.
>
> This procedure will be followed any time a segregation inmate leaves his cell for any reason. There will be no exceptions to this procedure.

(EXHIBIT 3).

47.   By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably removed and denied the residuum of privacy and personal rights retained by Chris Fry.

11

48.     Both New Mexico and Virginia Defendants are liable for the damages resulting from their violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted and unjustified searches and seizures.

## COUNT 4

## DENIAL OF EQUAL PROTECTION OF THE LAW

49.     The preceding allegations and claims are adopted.

50.     By selecting Plaintiff and compelling his transfer to Super maximum security confinement in Virginia Defendants acted arbitrarily and unreasonably and violated Plaintiff's right to equal protection of the law.

51.     At Wallens Ridge the New Mexico prisoners are segregated in their own section and are treated more harshly and cruelly than groups of prisoners from other states. Furthermore, Defendants are treating Plaintiff even worse than they treat most of the New Mexico prisoners.

52.     By treating Plaintiff and many of the other Santa Rosa prisoners differently from other prisoners and by treating Plaintiff and other New Mexico prisoners differently and more harshly than other prisoners at WRSP, Defendants have denied Plaintiff's constitutional right to equal protection and are liable for damages resulting from their violations.

## COUNT 5

## CONSPIRACY

53.   The preceding allegations and claims are adopted.

54.   Defendants met, conversed, planned, and arranged between and among themselves and with their subordinates to execute the transfer, placement, and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

55.   Defendants have acted individually and together with each other and other government officials and employees to plan, cause, and effect the transfer of Plaintiff and other prisoners to Wallens Ridge State Prison knowing that the transfer and placement would inevitably cause extraordinary physical and emotional pain, suffering, and damage.

56.   Plaintiff is entitled to damages and other relief for injuries resulting from Defendants conspiracy to violate his constitutional rights.

## COUNT 6

## VIOLATION OF INTERSTATE COMPACT

57.   The preceding allegations and claims are adopted.

58.   Defendants have entered into an Interstate Compact and other understandings between the New Mexico and Virginia Departments of Corrections.

59.   On September 3, 1999, New Mexico Corrections Secretary Robert Perry and Virginia Corrections Director Ron Angelone entered into a Memorandum of Understanding expressly providing for the transfer of the New Mexico prisoners to Wallens Ridge State Prison.

60.     The Interstate Compact, codified as State law at 31-5-17 NMSA (2000), provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner . . . .."

61.     The Compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

62.     Defendants have breached the provisions of the Interstate Compact by failing to treat Plaintiff and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

63.     Plaintiff is a third-party beneficiary who has been damaged as a result of Defendants' breach of the Interstate Compact and Defendants are liable to Plaintiff for damages sustained as a proximate result of their misconduct.

## COUNT 7

### SUPERVISORY AND MANAGEMENT LIABILITY

64.     The preceding allegations and claims are adopted.

65.     The denials of due process rights and the gratuitous use of force described herein evidence malicious attempts to inflict punishment and injury, rather than good faith efforts to maintain order and the security of the institution.

66.     Defendants Perry, Angelone, and Young failed to monitor and control the excessive use of force against Plaintiff. In fact, Defendants initiated and supported such

oppressive conditions of confinement and encouraged and condoned such excessive use of force.

67.     Defendants engaged in a pattern and practice of using excessive force and of demonstrating deliberate indifference to the rights and interests of Plaintiff and other New Mexico prisoners at WRSP. Defendants are liable for damages resulting from their excessive use of force and their deliberate indifference to Plaintiff's rights.

## COUNT 8

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CLAIM FOR PUNITIVE DAMAGES

68.     The preceding allegations and claims are adopted.

69.     Defendants' unconstitutional conduct described herein was willful, wanton, deliberate, malicious, and intended to and did punish and inflict pain and emotional harm upon Plaintiff for acts he did not commit.

70.     Defendants have acted with deliberate and utter indifference for the rights of Chris Fry; their conduct in this case is shocking and egregious.

71.     Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent Defendants and others from committing such extreme and offensive constitutional violations in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the award of the following relief:

A.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process and equal protection of the law, including but not limited to damages for pain, injury, suffering, and emotional distress.

B.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures and cruel and unusual punishment.

C.     Declaratory and compensatory relief for damages resulting from violations of the interstate compact and other agreements among the parties.

D.     An Injunctive Order requiring Defendants to return Chris Fry to New Mexico and requiring Defendants to provide counseling, therapy, treatment, and care necessary to treat him for the immediate and the long-term effects of his experience at Wallens Ridge.

E.     Compensatory damages for the intentional infliction of emotional distress on Plaintiff.

F.     Exemplary and punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least Two Million Dollars.

G.     Costs of this action and reasonable attorneys' fees.

H.     Such other and further equitable or legal relief as the Court deems just, proper, and necessary.

16

Respectfully submitted,

Paul Livingston
Attorney for Chris Fry
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410

## VERIFICATION

I, JOHNNY FRY, being duly sworn upon my oath, do hereby state and affirm that I

I am the legal guardian of CHRISTOPHER LEE FRY, that I hold the power of attorney for

Chris Fry, that I have read the foregoing complaint, that I understand the complaint, and that

the facts set out therein are true and correct, to the best of my knowledge.

_____
JOHNNY FRY

COUNTY OF BERNALILLO        )
                                    ) ss
STATE OF NEW MEXICO         )

Sworn and Subscribed to before me this 15ᵗʰ day of March, 2000, by Johnny Fry

_____
NOTARY PUBLIC

My Commission Expires:   JUNE 1, 2003



OFFICIAL SEAL
PAUL LIVINGSTON
Notary Public
State of New Mexico
My Appointment Expires 6/1/03

# ATTENTION:

# THIS DOCUMENT IS POSTED FOR INFORMATION TO ALL INMATES:

ANY FURTHER INCIDENTS OF VIOLENCE WILL RESULT IN TRANSFER OF INMATES TO OUT OF STATE FACILITIES.

YOU WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.

YOUR INSTITUTION WILL BE LOCKED DOWN UNTIL SUCH TIME AS THE AFFECTED INMATE TRANSFERS HAVE OCCURRED.

STATE OF NEW MEXICO
CORRECTIONS DEPARTMENT

Plaintiff's
**EXHIBIT 1**

FOR IMMEDIATE RELEASE-September 3, 1999

## CORRECTIONS SECRETARY ANNOUNCES INMATE TRANSFER

(Santa Fe)---New Mexico Corrections Secretary Robert J. Perry announced this morning the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia. The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia. The inmates were transported early this morning from the U-S Customs Hanger at Kirtland Air Force Base in Albuquerque via a U-S Marshall Transport Jet Plane. The operation is a joint effort of New Mexico Corrections Department, New Mexico State Police and the U-S Marshall Service.

The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers, armed with 12 gauge combat shotguns. Secretary Perry said this morning; "They (inmates) will not receive the amenities they have been accustomed to while in prison in New Mexico." He added, "I do not expect a repeat of their past behavior in the Virginia Facility considering these conditions of confinement and supervision."

Several inmates who were participants and witnesses in Tuesday's homicide are being held in a New Mexico Super Max facility for disposition of their case. Secretary Perry said, " I am hopeful these inmates are fully prosecuted to the full extent of the law, which includes a death penalty sentence for their vicious killing of Officer Garcia."

**FOR ADDITIONAL INFORMATION CONTACT THE CORRECTIONS DEPARTMENT AT: PAGER NUMBER 989-5755.**

Plaintiff's
# EXHIBIT 2



# Memo

**To:**   INMATE POPULATION

**From:**   MAJOR T. YATES

**Date:**   11/12/99

**Re:**   STRIP SEARCH PROCEDURE

LATELY THERE HAS BEEN SOME CONFUSION ABOUT THE STRIP SEARCH PROCEDURE HERE AT WALLENS RIDGE STATE PRISON. THIS MEMO WILL CLEAR UP ANY QUESTIONS YOU MAY HAVE ABOUT THIS PROCEDURE.

ANY TIME A STRIP SEARCH IS CONDUCTED THE INMATE WILL BE REQUIRED TO STRIP OFF ALL HIS CLOTHING, TURN AROUND SLOWLY, PUT HIS HANDS ON HIS BUTTOCKS, SPREAD HIS BUTTOCKS, SQUAT TO THE GROUND WHILE BUTTOCKS IS STILL SPREAD, AND COUGH HARD TWICE.

THIS PROCEDURE WILL BE FOLLOWED ANY TIME A SEGREGATION INMATE LEAVES HIS CELL FOR ANY REASON. THERE WILL BE NO EXCEPTIONS TO THIS PROCEDURE.

MAJOR T. YATES

Plaintiff's
**EXHIBIT 3**